[9 NYS3d 167]

In the Matter of KIRSTEN ELIZABETH FRANKLIN, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, May 20, 2015

**APPEARANCES OF COUNSEL**

*Mitchell T. Borkowsky*, Hauppauge (*Daniel M. Mitola* of counsel), for petitioner.

*Kirsten Elizabeth Franklin*, New York City, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

By order of the Supreme Court of Florida dated January 7, 2010 (26 So 3d 1291 [Fla 2010] [table; text at 2010 WL 59187, Jan. 7, 2010, No. SC09-2301]), the respondent was suspended from the practice of law in that state, on consent, for a period of three years. The order was predicated upon a "Stipulation as to Probable Cause, Unconditional Guilty Plea, and Consent Judgment for Discipline" (hereinafter the stipulation), which set forth the following:

At all relevant times, the respondent was a member of the Florida Bar and subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida. As the subject of a grievance file, the respondent waived her right to a hearing, and stipulated to the following:

1. The respondent was employed as in-house counsel for Outreach Housing, LLC (hereinafter Outreach), from April 21, 2008 through July 2008.

2. Outreach was a company marketed to consumers as a service provider for foreclosure defense and real estate loss mitigation for persons facing those issues with mortgage lenders in Florida.

3. On or about July 18, 2008, the respondent formed Real Estate Law Group, PLLC, in Florida, and entered into an agreement with Outreach and its owner, Blair Wright, a nonlawyer, whereby the respondent received monies for her office's initial operating expenses and, thereafter, shared fees with Outreach by receiving monthly payments for filing and client fees from Outreach.

4. The respondent became responsible for approximately 600 client files under the terms of her agreement with Outreach, and pursuant to the documents executed by the participating clients of Outreach.

5. By the terms of the agreement between the respondent and Outreach, the respondent allowed Wright to direct her professional judgment and actions.

6. On August 29, 2008, Outreach commenced an action against the respondent after a complete breakdown of their business relationship.

7. Subsequently, all client files being handled by the respondent were abandoned, and all legal representation of those individuals ceased.

8. Additionally, numerous clients who paid and retained the respondent directly also were neglected, in that their foreclosure cases were abandoned.

9. As of the date of the stipulation, the respondent had failed to notify the clients and/or the courts of her withdrawal and/or termination of representation in any of the client matters in which she agreed to provide services.

10. Additionally, the respondent had failed to refund to the clients any fees received pursuant to the respective representations.

11. The respondent admitted that by reason of the foregoing, she violated Florida Rules of Professional Conduct rules 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); 4-1.4 (communication); 4-1.5 (fees and costs for legal services); 4-5.4 (a) (sharing fees with nonlawyers), 4-5.4 (d) (a lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services) and 4-5.4 (e) (3) (a lawyer shall not practice with or in the form of a business entity authorized to practice law for a profit if a nonlawyer has the right to direct or control the professional judgment of the lawyer); and 4-8.4 (a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another).

Pursuant to the foregoing, the respondent agreed to be suspended from the practice of law in Florida for a period of three years; to pay restitution to certain individuals in the total amount of $20,923 within three years of entry of the order of the Supreme Court of Florida; and to pay costs reason-

ably incurred by the Florida Bar in the total amount of $6,880.70.

The Supreme Court of Florida approved the stipulation in the order dated January 7, 2010, and the respondent was suspended from the practice of law in Florida for a period of three years, effective 30 days from the date of the order. There is no record of the respondent advising this Court of such discipline as required by 22 NYCRR 691.3 (e).

On or about December 1, 2014, the Grievance Committee for the Tenth Judicial District served the respondent with a notice pursuant to 22 NYCRR 691.3, apprising her of her right to file, within 20 days of service upon her, a verified statement setting forth any of the defenses to the imposition of reciprocal discipline enumerated in section 691.3 (c), to wit, that the procedure in the foreign jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; that there was such an infirmity of proof establishing the misconduct that this Court could not accept as final the finding of the court in the foreign jurisdiction; or that the imposition of discipline by this Court would be unjust.

On or about December 10, 2014, the respondent filed an affidavit in response, wherein she raised none of the defenses enumerated in section 691.3 (c). Rather, she attempted to elaborate upon the facts and circumstances underlying the stipulation.

The respondent stated that in or about 2008, she entered into an arrangement with Outreach and Wright to provide legal services to their clients. She averred that, prior thereto, she learned she was pregnant, and that she planned to raise the child on her own without support from the child's father or her family.

Within the first week of her business operations with Outreach and Wright, the respondent asserted that she became "alarmed" by clients' statements, including that Outreach was their attorney, so they did not understand why they were being referred to the respondent and her firm. Clients also stated that Outreach modified their mortgage and "we are paying Outreach a new lower monthly payment amount so why did we receive a foreclosure notice?"; "I went to Outreach because I wanted to modify my mortgage, I was not late on payments but Outreach told me to stop paying the mortgage"; and "Outreach told us to stop paying the mortgage and put what we can into the escrow account to show the judge what we can afford to

pay." Moreover, the respondent averred that she began to discover that clients were paying their monthly mortgage amounts, or slightly less, into escrow accounts for which Wright had power of attorney, and which he allegedly "wiped out." The respondent hired corporate counsel and instructed the clients to request an accounting of their escrow accounts. According to the respondent, Wright "caught wind" of her activities and interrupted her access to clients' electronic files, told clients that the respondent's office stole money from their escrow accounts, and commenced an action against her.

The respondent asserted that, both before and after the birth of her child in October 2008, she tried to wind down her firm by herself, since she no longer had any staff. She stated that, at or about that time, she could no longer afford to pay rent and moved in with a friend. She averred that she was "penniless" and "depressed."

In late 2008, the Florida Bar commenced its investigation, with which the respondent asserted she fully cooperated. In November 2009, the respondent averred that the Florida Bar asked her to sign the stipulation. The respondent stated that, at or about that time, she was not practicing law, she was still "very depressed," and she was living in her friend's spare bedroom in New Jersey, where she had relocated. However, according to the respondent, her friend asked her to leave. Absent "access to any of [her] records," and "having faith in the Florida Bar," the respondent signed the stipulation.

The respondent emphasized that the Florida Bar did not allege that she, or her firm, mishandled client funds. Moreover, after investigation, the respondent averred that the Florida Bar found only 16 clients, out of 600, who had not received proper refunds due to being "abandoned" despite the respondent's efforts.

According to the respondent, she applied for reinstatement to the Florida Bar and anticipated being reinstated. She requested that, should this Court conclude that the imposition of reciprocal discipline is necessary, consideration be given to the circumstances outlined above.

Inasmuch as the respondent has asserted none of the enumerated defenses to the imposition of reciprocal discipline, there is no impediment to the imposition of reciprocal discipline, and the application of the Grievance Committee to impose reciprocal discipline is granted. Under the totality of the circumstances, including the mitigating circumstances prof-

fered by the respondent, she is suspended from the practice of law for a period of three years, nunc pro tunc to February 6, 2010, with leave to apply for reinstatement immediately, contingent upon proof that she has been reinstated in Florida.

MASTRO, J.P., RIVERA, SKELOS, DILLON and CHAMBERS, JJ., concur.

Ordered that the Grievance Committee's application to impose reciprocal discipline pursuant to 22 NYCRR 691.3 is granted; and it is further,

Ordered that the respondent, Kirsten Elizabeth Franklin, is hereby suspended from the practice of law for a period of three years, nunc pro tunc to February 6, 2010, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement immediately, contingent upon proof that she has been reinstated in Florida; and it is further,

Ordered that pursuant to Judiciary Law § 90 and until the further order of this Court, the respondent, Kirsten Elizabeth Franklin, shall desist and refrain from (1) practicing law in New York in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law in New York before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to New York law or its application or any advice in relation thereto, and (4) holding herself out in any way as a New York attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Kirsten Elizabeth Franklin, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 691.10 (f).